UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL SANTO,

Plaintiff,

v.

TOWN OF LEXINGTON, and MICHAEL RIZZO, in his individual capacity,

Defendants.

Civil Action No.

**COMPLAINT**

**INTRODUCTION**

1. This is a civil rights claim for money damages against former Lexington police officer Michael Rizzo and the Town of Lexington. Although Defendant Rizzo had no lawful reason to touch Plaintiff, Rizzo grabbed Michael Santo's arm and fractured his elbow. Mr. Santo had four operations over a period of two years to repair his elbow. The elbow will never be the same, and he will have pain and surgical scars for the rest of his life. Plaintiff's injury was caused by the Town's failure to take action before this incident to properly supervise and discipline its police officers in general and officer Rizzo in particular. Ultimately, the Town correctly determined that officer Rizzo had used unnecessary and excessive force on Mr. Santo, then lied about it. The Town fired him, and after a hearing the Civil Service Commission upheld the termination. However, the Town's long-overdue action came too late to protect Michael Santo from Defendant Rizzo, who had openly flouted police department rules for years. Even in

this case, the department's initial response was to turn a blind eye to Rizzo's wrongdoing, refusing even to make a written report of complaints from Mr. Santo and his father.

**JURISDICTION**

2. This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367 to hear and decide claims arising under M.G.L. c. 12, §11 and Massachusetts tort law.

**PARTIES**

3. Plaintiff Michael Santo was at all times material to this complaint a resident of the Commonwealth of Massachusetts.

4. Defendant Town of Lexington is a Massachusetts municipal corporation located in Middlesex County and was at all times material to this complaint the employer of Defendant Rizzo.

5. Defendant Michael Rizzo was at all times material to this complaint a police officer in the Town of Lexington. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the Town of Lexington. He is sued in his individual capacity.

**FACTS**

6. Defendant Michael Rizzo began working as an auxiliary Lexington police officer in 1993. He became a full-time officer in 1998.

7. On early Sunday morning, August 27, 2006, Defendant Rizzo worked an overtime

shift from midnight to 4 a.m. He had worked a regular shift just before this from 4 p.m. to midnight.

8. At about 3:03 a.m., Lexington police received a call regarding a disturbance at the house next door to where Mr. Santo lived with his parents. The disturbance was at the home of Plaintiff's cousin.

9. Defendant Officer Rizzo and fellow Lexington police officer Hsien Kai Hsu responded in separate marked police cars.

10. Plaintiff came outside to see that his cousin was all right.

11. Officer Hsu told Mr. Santo that he could observe from a spot on his cousin's lawn.

12. Eventually officer Hsu asked Mr. Santo to go home.

13. Mr. Santo walked toward his home. He asked officer Hsu to turn off his headlights so they would not wake up Plaintiff's parents.

14. The police officers planned that officer Hsu would drive the female to her home while Defendant Rizzo followed them in his car, pursuant to the police department's policy to prevent false allegations of misconduct when transporting a person of the opposite sex.

15. Mr. Santo called a friend on his cell phone from the patio of his home, then moved to his driveway as he spoke. As the officers left, he waved at them from his driveway.

16. Defendant Rizzo drove past Plaintiff's home but then pulled his police car into Plaintiff's driveway.

17. Defendant Rizzo told Mr. Santo he was causing a disturbance and ordered him to go inside his home. Mr. Santo was standing on his own property and was not causing a

disturbance. There was no lawful reason to order him to go into his home.

18. Defendant Rizzo got out of his police car and engaged in words with Mr. Santo. Defendant Rizzo got close to Mr. Santo's face and said, "You are causing a disturbance, you are making a ruckus in the neighborhood. Lights are going on. Would you like me to arrest you?"

19. Mr. Santo responded, "What are you going to arrest me for? I am not doing anything wrong." He offered to wake up his parents so they could speak to Defendant Rizzo.

20. After further discussion, but without warning, Defendant Rizzo grabbed Mike Santo's left arm, pulled him forward, spun him around, put one hand on his elbow, pushed his left arm up, and slammed him into the trunk of a car. Then Rizzo pushed the left arm up higher.

21. Mr. Santo felt a pop in his elbow, then a grinding. Mr. Santo felt extreme pain in his left elbow. When Mr. Santo was able to turn around to face Defendant Rizzo, Defendant Rizzo said, "Let's talk about this; let's just talk about what just happened."

22. Defendant Rizzo left the scene without arresting Mr. Santo. Mr. Santo was never charged with any crimes as a result of this incident, nor had he committed any.

23. Defendant Rizzo had no justification for using any force on Mr. Santo. Even if he had had a reason to touch Mr. Santo, the force he used was unreasonable and excessive.

24. Mr. Santo immediately called the Lexington police department to complain about Defendant Rizzo's use of excessive force. He spoke to Lt. James E. Barry, Jr., the officer in charge of the police station at that hour.

25. The Town did not have a proper internal system for discipline of its police officers, which led Rizzo and other officers to feel that they could commit misconduct with impunity. This is shown by the initial reaction to Plaintiff's complaint. Instead of following

proper procedures, which would have required preparing written reports, Lt. Barry decided to conduct his own investigation of the incident. After a cursory, informal investigation that morning, Lt. Barry decided not to file a written report of the complaint. Even after Plaintiff and his father met with Lt. Barry, the lieutenant did not make a written record of the complaint, nor did he inform his superiors of the complaint.

26. Only on August 29, after Plaintiff's father informed Lt. Barry that Michael Santo had a fractured elbow, did Lt. Barry tell Defendant Rizzo that he was going to allow an official written complaint about Defendant Rizzo's conduct to be filed by Plaintiff Santo.

27. Policymaking officials in the Lexington police department knew that officer Rizzo was not suited for police work. By November 2005 they knew of at least five other incidents where he had engaged in unprofessional, confrontational behavior, as well as several other instances of improper conduct. The Town merely issued Defendant Rizzo a letter of reprimand. In the months between that letter and the August 2006 incident involving Plaintiff, Defendant Rizzo received two more letters, including one reprimand, for insubordination.

28. Policymaking officials in the Lexington police department were aware of Defendant Rizzo's temper. Instead of taking appropriate remedial action to prevent abuse of civilians by Defendant Rizzo, the Town chose to wait until he seriously injured someone.

29. Defendant Rizzo and a group of other Lexington police officers became their own police force within the police force. These officers felt that they did not have to follow the official rules of the police department. Instead, this group of officers followed their own informal code. For example, these officers did not follow the department's written rules for reporting when they used force.

30. The failure of Defendant Town of Lexington to properly discipline and supervise Defendant Rizzo and other Lexington police officers was the moving force that led officer Rizzo to violate Plaintiff's constitutional rights on August 27, 2006.

31. The evening after the incident, Lt. Barry asked Defendant Rizzo if anything unusual had happened at the scene. Defendant falsely said no. Lt. Barry asked Defendant Rizzo if he had grabbed Mr. Santo by the arm and twisted his arm for no reason. Defendant Rizzo falsely said that never happened.

32. Defendant Rizzo falsely claimed that Mr. Santo was talking in a loud voice on his cell phone as Rizzo was driving away, following officer Hsu; that Mr. Michael Santo was intoxicated when he was speaking to officer Hsu; that Mr. Santo threatened to disturb the peace; and that he reached for Mr. Santo's wrist to prevent him from disturbing the peace.

33. After Mr. Santo was able to file his complaint about Defendant Rizzo, the Town of Lexington took action, terminating Defendant Rizzo from his job as a police officer.

34. Defendant Rizzo appealed his termination to the Civil Service Commission of the Commonwealth of Massachusetts. The Commission held a hearing at which the Town of Lexington argued that Defendant Rizzo should be fired for using force on Plaintiff when there was no justification to use force, for being untruthful in his reports about the incident, and for failing to perform his duties in a courteous and professional manner, among other things.

35. Defendant Rizzo and the Town litigated these issues at the Civil Service Commission. The hearing took place over seven days. Both sides called witnesses, as did the hearing officer. Forty-one exhibits were entered into evidence. Both sides submitted post-hearing briefs.

36. On November 13, 2008, the Civil Service Commission affirmed the termination, finding among other things that Defendant Rizzo used force on Michael Santo with no justification; that Defendant Rizzo was untruthful; and that he had failed to perform his duties in a courteous and professional manner.

37. As a result of the incident, Plaintiff suffered an ulnar avulsion fracture near his elbow, which caused excruciating pain and loss of function of the elbow. Mr. Santo went through four operations until he finally achieved significant relief almost two years after the injury. He still has an elbow that will always ache, and he is likely to develop arthritis in the elbow at an earlier age, bringing on additional pain and stiffness. He has incurred approximately $80,000 in medical bills. He suffered physical pain and mental anguish. Mr. Santo worried that he would not recover enough strength in his left elbow to work building homes as part his family's business. Mr. Santo has a number of visible scars on his arm from the operations to repair his elbow.

**COUNT ONE: 42 U.S.C. § 1983 Against Defendant Rizzo**

38. The above paragraphs are incorporated by reference.

39. Defendant Rizzo had no reason to use force against Plaintiff.

40. Defendant Rizzo used unreasonable force against Plaintiff.

41. Defendant Rizzo deprived Plaintiff of his clearly established and well-settled rights under the Fourth and Fourteenth Amendments to the Constitution, to be free from unreasonable force, and to be free from unreasonable seizures of his person.

42. Defendant Rizzo acted with knowing or reckless disregard of Plaintiff's constitutional rights.

43. As a direct and proximate result of Defendant's conduct, Plaintiff suffered the

injuries described above.

**COUNT TWO: Massachusetts Civil Rights Act, M.G.L. c. 11, §12 Against Defendant Rizzo**

44. The above paragraphs are incorporated by reference.

45. Defendant Rizzo violated Plaintiff's rights by threats, intimidation, and coercion.

46. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages as described above.

**COUNT THREE: Tort of Assault and Battery Against Defendant Rizzo**

47. The above paragraphs are incorporated by reference.

48. Defendant Rizzo committed the tort of assault and battery on the plaintiff.

49. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages as described above.

**COUNT FOUR: 42 U.S.C. § 1983 *Monell* Claim Against the Town of Lexington**

50. The above paragraphs are incorporated by reference.

51. Before the incident between Plaintiff and Defendant Rizzo, the Town of Lexington had shown deliberate indifference to misconduct by its police officers, particularly Defendant Rizzo.

52. The Town had a policy or custom or failing to properly supervise and discipline its officers. An informal policy had developed under which duty supervisors like Lt. Barry felt that they could refuse to accept a civilian's complaint about a police officer at their discretion.

53. The Town permitted Defendant Rizzo and other police officers in the Town to believe that they could ignore the formal policies of the Town and to develop their own police department within the police department.

54. These policies and customs were the moving force behind the actions of Defendant Rizzo resulting in the injury to Plaintiff.

55. As a proximate cause of the actions and omissions of the Town of Lexington, Plaintiff suffered damages as described above.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

1. Award compensatory damages;
2. Award punitive damages against Defendant Michael Rizzo;
3. Award the costs of this action, including reasonable attorney's fees, to Plaintiff; and
4. Award such other and further relief as this Court may deem necessary and appropriate.

**JURY DEMAND**

A jury trial is hereby demanded.

RESPECTFULLY SUBMITTED,
For the Plaintiff,
By his attorneys,

/s/ Howard Friedman

Howard Friedman
BBO #180080
David Milton
BBO # 668908
Law Offices of Howard Friedman
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100

Dated: January 21, 2009